CROWELL & MORING LLP
Jennifer S. Romano (CSB No. 195953)
  jromano@crowell.com
Dylan S. Burstein (CSB No. 307083)
  dburstein@crowell.com
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: 213.622.4750
Facsimile: 213.622.2690

CROWELL & MORING LLP
Daniel M. Glassman (CSB No. 179302)
  dglassman@crowell.com
Stephanie V. Phan (CSB No. 322855)
  sphan@crowell.com
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
Telephone: 949.263.8400
Facsimile: 949.263.8414

Attorneys for Defendants UNITED HEALTHCARE SERVICES, INC., UNITED BEHAVIORAL HEALTH, and OPTUM SERVICES, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| ABC SERVICES GROUP, INC., a Delaware corporation, in its capacity as assignee for the benefit of creditors of MORNINGSIDE RECOVERY, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE SERVICES, INC., a Minnesota corporation; UNITED BEHAVIORAL HEALTH, a California corporation; OPTUM SERVICES, INC., a Delaware corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 8:19-cv-00531-DOC (DFMx)<br><br>Hon. David O. Carter<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)**<br><br>Hearing Date: June 10, 2019<br>Hearing Time: 8:30 a.m.<br>Courtroom: 9D |

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DEFENDANTS' REPLY ISO
MOTION TO DISMISS;
CASE NO. 8:19-CV-00531-DOC (DFM)

# TABLE OF CONTENTS

**Page**

SUMMARY OF REPLY ........................................................................... 1

ARGUMENT ........................................................................................... 2

I.   PLAINTIFF HAS ABANDONED ITS IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, QUANTUM MERUIT, AND PROMISSORY ESTOPPEL CLAIM .................................................. 2

II.  PLAINTIFF LACKS STANDING TO ASSERT ITS ERISA CLAIM. ........ 2

III. ALTERNATIVELY, PLAINTIFF FAILED TO PLEAD A VIABLE ERISA CLAIM ................................................................................. 5

    A.   Plaintiff Does Not Plead Sufficient Facts To Allege Valid Assignments From The Members To Morningside. ........................... 5

    B.   Plaintiff Does Not Allege Facts To Plausibly Show That United Breached The ERISA Plans At Issue. .................................... 7

IV.  THE BREACH OF IMPLIED CONTRACT CLAIM FAILS BECAUSE PLAINTIFF DOES NOT ALLEGE FACTS TO PLAUSIBLY PLEAD THE EXISTENCE OF A CONTRACT ................... 8

V.   PLAINTIFF LACKS STANDING TO ASSERT A UCL CLAIM ............... 9

    A.   Plaintiff Concedes It Is Not A Competitor Or Consumer. .................. 9

    B.   Plaintiff Cannot, As A Matter Of Law, Assert A Derivative UCL Claim Based On Alleged Injuries To United Beneficiaries ...... 10

CONCLUSION ..................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcazar v. Bank of Am.*,
No. CV 11-05645 DDP MANX, 2012 WL 3106182 (C.D. Cal. July
30, 2012) ................................................................................................ 2

*Almont Ambulatory Surgery Ctr. v. UnitedHealth Group Inc.*,
99 F. Supp. 3d 1110 (C.D. Cal. 2015) .................................... 7, 8, 11

*Amalgamated Trans. Union, Local 1756, AFL-CIO v. Super. Ct.*,
46 Cal. 4th 993 (2009) ............................................................ 2, 10, 11

*Armijo v. ILWU-PMA Welfare Plan*,
No. CV-15-01403-MWF (VBKx), 2015 WL 13629562 (C.D. Cal.
Aug. 21, 2015) ...................................................................................... 9

*Casa Bella Recovery Int'l, Inc. v. Humana Inc.*,
No. SACV 17-01801 AG (JDEx), 2017 WL 6030260 (C.D. Cal.
Nov. 27, 2017) .................................................................................. 8, 9

*Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*,
497 F.3d 972 (9th Cir. 2007) ........................................................... 8, 9

*ChromaDex, Inc. v. Elysium Health, Inc.*,
301 F. Supp. 3d 963 (C.D. Cal. 2017) ............................................ 9, 10

*Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.*,
277 F.R.D. 586 (S.D. Cal. 2011) ........................................................ 11

*Cty. of Monterey v. Blue Cross of Cal.*,
No. 17-CV-04260-LHK, 2019 WL 343419 (N.D. Cal. Jan. 28,
2019) ...................................................................................................... 7

*Davidowitz v. Delta Dental Plan of California, Inc.*,
946 F.2d 1476 (9th Cir. 1991) .............................................................. 6

*DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz. Inc.*,
No. CV-13-01558-PHX-NVW, 2014 WL 3349920 (D. Ariz. July 9,
2014) ...................................................................................................... 6

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-ii-

DEFENDANTS' REPLY ISO
MOTION TO DISMISS;
CASE NO. 8:19-CV-00531-DOC (DFM)

*Div. of Labor Law Enf't v. Transpacific Transp. Co.*,
   69 Cal. App. 3d 268 (1977) .................................................................. 8

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*,
   463 U.S. 1 (1983) ................................................................................. 3

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
   903 F. Supp. 2d 880 (C.D. Cal. 2012) ............................................... 11

*Linear Tech. Corp. v. Applied Materials, Inc.*,
   152 Cal. App. 4th 115 (2007) ............................................................ 10

*Marin Gen. Hosp. v. Modesto & Empire Traction Co.*,
   581 F.3d 941 (9th Cir. 2009) .......................................................... 8, 9

*Misic v. Bldg. Serv. Emps. Health & Welfare Tr.*,
   789 F.2d 1374 (9th Cir. 1986) ................................................... 3, 4, 6

*NAMDY Consulting, Inc. v. Anthem Blue Cross Life and Health Ins. Co.*,
   Case No. CV 18-03243 SJO (MRW), 2018 WL 6136776 (C.D. Cal.
   July 17, 2018). ................................................................................. 1, 5

*Odom v. Microsoft Corp.*,
   486 F.3d 541 (9th Cir. 2007) .............................................................. 1

*Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*,
   12 Cal. App. 5th 200 (2017) ......................................................... 2, 8, 9

*Simi Surgical Ctr., Inc. v. Conn. Gen. Life Ins. Co. et al.*,
   No. 2:17-CV-02685-SVW-AS, 2018 WL 6332285 (C.D. Cal. Jan.
   4, 2018) .............................................................................................. 7

*Simon v. Value Behavioral Health, Inc.*,
   208 F.3d 1073 (9th Cir. 2000) ............................................... 1, 3, 4, 5

**Statutes and Rules**

29 U.S.C. § 1132(a)(1)(B) ...................................................................... 3

Cal. Bus. & Profs. Code § 17204 ......................................................... 11

C.D. Cal. L.R. 7–12 ............................................................................... 2

ERISA § 502(a)(1)(B) ......................................... 1, 2, 3, 4, 5, 6, 7, 8, 9, 11

CROWELL
& MORING LLP
ATTORNEYS AT LAW

# SUMMARY OF REPLY

Plaintiff ABC Services Group ("Plaintiff"), a collection agency that purchased the assets of a failed healthcare provider, fails to overcome the fatal flaws of its Complaint. As established in the United Defendants' Motion to Dismiss, the Complaint fails to state facts sufficient to support any cause of action against United. The opposition lacks any cogent argument, factual or legal, to the contrary, and the Complaint should be dismissed in its entirety for the following reasons:

First, Plaintiff does not defend and therefore abandons its implied covenant of good faith and fair dealing, quantum meruit, and promissory estoppel causes of action. For this reason, and those set forth in the Motion, these claims should be dismissed.

Second, Plaintiff lacks standing to assert its ERISA cause of action as a matter of law. The Ninth Circuit has held that the right to pursue ERISA benefits cannot be assigned to entities that do not provide health care services, and such entities—like Plaintiff collection agency—cannot derivatively sue under ERISA. *See Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1081 (9th Cir. 2000), *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007); *NAMDY Consulting, Inc. v. Anthem Blue Cross Life and Health Ins. Co.*, Case No. CV 18-03243 SJO (MRW), 2018 WL 6136776, at *3 (C.D. Cal. July 17, 2018).

Third, and alternatively, while Plaintiff argues it cannot allege the terms of the ERISA plans allegedly breached because it does not have the documents, this does not excuse Plaintiff's failure to conduct a reasonable investigation into the facts supporting its claims. Moreover, the opposition fails to offer any reasonable explanation why Plaintiff also failed to allege facts that are unquestionably in its possession such as identifying the specific services Morningside allegedly provided to the members.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-1-

DEFENDANTS' REPLY ISO
MOTION TO DISMISS;
CASE NO. 8:19-CV-00531-DOC (DFM)

1    <u>Fourth</u>, Plaintiff's allegations that Morningside "requested pre-authorizations

2    or pre-certifications from United" and that United "represent[ed] that it would

3    reimburse [Morningside] for its services" do not meet the requirements to plead a

4    breach of implied contract claim.  As demonstrated in the Motion, courts find such

5    allegations insufficient and instead require specific allegations about when the

6    contract was entered, the types of services to be provided, and how much defendant

7    agreed to pay for the services.  *See Pac. Bay Recovery, Inc. v. Cal. Physicians'*

8    *Servs., Inc.*, 12 Cal. App. 5th 200, 216 (2017).

9    <u>Fifth</u>, the opposition confirms Plaintiff lacks standing to assert a claim under

10   California's Unfair Competition Law.  The Supreme Court of California has

11   unequivocally determined that an assignee lacks standing to assert a UCL claim on

12   behalf of an injured party, exactly what Plaintiff attempts here.  *See Amalgamated*

13   *Trans. Union, Local 1756, AFL-CIO v. Super. Ct.*, 46 Cal. 4th 993, 1002 (2009).

**ARGUMENT**

14

15   **I.    Plaintiff Has Abandoned Its Implied Covenant Of Good Faith And Fair
        Dealing, Quantum Meruit, And Promissory Estoppel Claim.**

16

17         As demonstrated in the Motion, Plaintiff's implied covenant of good faith

and fair dealing, quantum meruit, and promissory estoppel claims fail as a matter of

18

law.  Acknowledging this, Plaintiff does not oppose United's Motion with respect

19

to these three causes of action and has conceded they are subject to dismissal.  *See*

20

C.D. Cal. L.R. 7–12; *Alcazar v. Bank of Am.*, No. CV 11-05645 DDP MANX, 2012

21

WL 3106182, at *1 (C.D. Cal. July 30, 2012) (dismissing claims because

22

"Plaintiffs' memorandum does not oppose Defendants' motion with respect to

23

[those claims]").

24

**II.   Plaintiff Lacks Standing To Assert Its ERISA Claim.**

25

26         Plaintiff's assertion that a collection agency that does not provide health care

services has "derivative" standing to assert a claim for recovery of plan benefits

27

under ERISA § 502(a)(1)(B) is contrary to Ninth Circuit precedent.  Plaintiff

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-2-

DEFENDANTS' REPLY ISO
MOTION TO DISMISS;
CASE NO. 8:19-CV-00531-DOC (DFM)

contends that United members assigned their benefits to Morningside Recovery who, in turn, assigned those assignments to Plaintiff (a double assignment). But the Ninth Circuit has held that such benefits cannot be assigned to an entity that does not itself provide health care services and, accordingly, a non-provider third-party lacks standing to bring an action to recover ERISA plan benefits. *Simon*, 208 F.3d at 1081.

ERISA § 502(a)(1)(B) only authorizes health plan participants and beneficiaries to bring civil actions to recover plan benefits. 29 U.S.C. § 1132(a)(1)(B); *see Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27 (1983). ERISA's statutory scheme says nothing, however, about whether a beneficiary can assign his or her rights to third parties. *Misic v. Bldg. Serv. Emps. Health & Welfare Tr.*, 789 F.2d 1374, 1376 (9th Cir. 1986). In *Misic*, the Ninth Circuit partly filled this statutory void by determining that "ERISA does not forbid assignment by a beneficiary of his right to reimbursement under a health care plan ***to the health care provider***." *Id*. at 1377 (emphasis added). It reasoned that allowing providers to sue derivatively upon a valid assignment furthered the purposes of ERISA by "making it unnecessary for health care providers to evaluate the solvency of patients before commencing medical treatment, and by eliminating the necessity for beneficiaries to pay potentially large medical bills and await compensation from the plan." *Id*. The court did not address whether ERISA benefits can be assigned to entities other than health care providers, creating derivative standing for the non-provider to sue to recover plan benefits.

Derivative standing for non-providers was addressed—and rejected—by the Ninth Circuit in *Simon*, 208 F.3d at 1081. In *Simon*, the Ninth Circuit limited *Misic*'s holding and determined that non-providers ***cannot*** obtain ERISA standing through assignment. *Id*. The relevant facts in *Simon* are virtually identical to the present matter. In *Simon*, over 600 mental health care patients assigned their

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-3-

DEFENDANTS' REPLY ISO
MOTION TO DISMISS;
CASE NO. 8:19-CV-00531-DOC (DFM)

1    benefit claims to various mental health care providers, which then reassigned the

2    claims to the plaintiff who was not a health care provider.  *Id*. at 1080.  The plaintiff

3    filed suit to recover on those claims, alleging, among other things, that defendants

4    violated ERISA.  *Id*.

5         The Ninth Circuit held the plaintiff did not have derivative standing.  *Id*. at

6    1081.  The court expressly declined "to extend *Misic* to cover not only health care

7    providers but also the assignee of health care providers."  *Id*.  "Because it is clear

8    from the face of the Complaint that Simon is not a health care provider to whom a

9    beneficiary has assigned his claim in exchange for health care, he is ineligible for

10   derivative standing under *Misic*."  *Id*.  The Court explained the policy reasons for

11   limiting derivate standing to health care providers:

12        We granted [derivative standing in *Misic*] because permitting

13        health care providers to sue in place of the beneficiaries they had

14        treated was consistent with Congressional intent in enacting

15        ERISA.  Granting derivative standing to health care providers

16        simplified the billing structure among the patient, his care

17        provider, and his benefit plan in a way that enhanced employee

18        health benefit coverage.  In the instant case, for us to grant [the

19        non-provider assignee] standing would be tantamount to

20        transforming health benefit claims into a freely tradable

21        commodity.  It could lead to endless reassignment of claims, and

22        it would allow third parties with no relationship to the

23        beneficiary to acquire claims solely for the purpose of litigating

24        them.  We do not see how such a result would further ERISA's

25        purpose.  Our review of the statutory text of Section 502,

26        relevant precedent, and the legislative history of ERISA also

27        revealed no indication that Congress intended for plaintiffs in

28        [the non-provider assignee's] position to sue under ERISA.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-4-

DEFENDANTS' REPLY ISO
MOTION TO DISMISS;
CASE NO. 8:19-CV-00531-DOC (DFM)

*Id.* at 1081–82 (internal quotes and citations omitted); *see also NAMDY Consulting*, 2018 WL 6136776, at *1, 3 (relying on *Simon* to find that "collection agency and assignee for out-of-network health care providers" did not have standing to sue under ERISA).

Here, it is clear from the face of the Complaint that Plaintiff is not a health care provider, but rather an assignee of a health care provider (Compl. ¶¶ 2, 6, 16, 26)—the exact type of entity the Ninth Circuit held lacked standing in *Simon*. Plaintiff thus lacks standing to assert an ERISA claim.

Plaintiff's opposition provides no authority to the contrary. Rather, it focuses on the noncontroversial principle that (absent an anti-assignment provision) ERISA does not prohibit beneficiaries from assigning their rights to their health care providers. But Plaintiff cannot avoid the fact it is not a health care provider; it is an alleged assignee of a provider. ERISA health plan benefits are not "freely tradeable commodit[ies]," and Plaintiff cannot manufacture an ERISA claim by purchasing one from Morningside. *Simon*, 208 F.3d at 1081. This lawsuit represents the very danger *Simon* warned against: a "third part[y] with no relationship to the beneficiary . . . acquir[ing] claims solely for the purpose of litigating them."[1] *Id.* Plaintiff's ERISA claim should be dismissed with prejudice for lack of standing.

## III.   Alternatively, Plaintiff Failed To Plead A Viable ERISA Claim.

Even if Plaintiff could obtain ERISA standing through assignment of the claims from Morningside, it has failed to plead sufficient facts to support this claim.

### A.   Plaintiff Does Not Plead Sufficient Facts To Allege Valid Assignments From The Members To Morningside.

Even if a non-provider like Plaintiff could sue for reimbursement under ERISA, Plaintiff still fails to allege facts to show that Morningside obtained valid assignments from the United members. While assignments to health care providers

---

[1] Indeed, this case is one of several virtually identical lawsuits Plaintiff filed against health plans based on assignments allegedly received from Morningside.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1   are not forbidden *per se*, they must be valid to be enforceable.  *See Misic*, 789 F.2d

2   at 1377–78.  A provider's "assertion that [it] ha[s] valid assignments is a legal

3   conclusion that need not be accepted without supporting factual allegations."  *DB*

4   *Healthcare, LLC v. Blue Cross Blue Shield of Ariz. Inc.*, No. CV-13-01558-PHX-

5   NVW, 2014 WL 3349920, at *8 (D. Ariz. July 9, 2014), *aff'd,* 852 F.3d 868 (9th

6   Cir. 2017) (plaintiff failed to allege valid assignment where plan contained anti-

7   assignment clause).

8         Here, Plaintiff fails to allege anything beyond the legal conclusion that

9   "[e]ach of the Patients have assigned all of their legal and equitable rights to

10   payment and to assert ERISA remedies under the Plans to [Morningside] in

11   writing."  (Compl. ¶ 26.)  The Complaint does not state any facts demonstrating the

12   alleged assignments.

13         Nor does the Complaint plead facts alleging the ERISA plans at issue even

14   permitted beneficiaries to assign their rights to health care providers like

15   Morningside.  "ERISA welfare plan payments are not assignable in the face of an

16   express non-assignment clause in the plan."  *Davidowitz v. Delta Dental Plan of*

17   *Cal., Inc.*, 946 F.2d 1476, 1481 (9th Cir. 1991).  And, as shown in the Motion, at

18   least some of the plans contain anti-assignment provisions.  (*See* Motion at pp. 6–7;

19   Dkt. No. 17-3 at p. 85.)  The plan introduced by United illustrates why Plaintiff

20   must allege facts to support its bare legal conclusion that Morningside obtained

21   assignments from plan beneficiaries.  If the plan documents do not permit

22   assignment, any purported assignment to Morningside would be ineffective.[2]

23   Absent valid assignments, Morningside lacks standing to bring an ERISA §

24   502(a)(1)(B) claim, and Plaintiff cannot assert one as Morningside's assignee.

25   

26         [2] Plaintiff's claim that it cannot allege these facts because it does not
currently possess the health plan documents is a red-herring.  Plan members have
27   the ability to request copies of the plan documents.  Morningside, if a valid
assignee, would have the same ability.
28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-6-

DEFENDANTS' REPLY ISO
MOTION TO DISMISS;
CASE NO. 8:19-CV-00531-DOC (DFM)

**B.      Plaintiff Does Not Allege Facts To Plausibly Show That United Breached The ERISA Plans At Issue.**

While Plaintiff's lack of standing is fatal to its ERISA claim, the claim also should be dismissed because Plaintiff fails to support its claim with sufficient factual allegations.  Plaintiff's purported inability to obtain copies of the health plans prior to filing this lawsuit does not excuse Plaintiff from pleading the specific services Morningside provided and alleging that the applicable ERISA plans cover those specific services.

To properly plead an ERISA claim, a provider must "allege that the specific services [it] provided to the patients at issue were covered under the terms of the relevant plans or describe the plan terms that would support such coverage." *Almont Ambulatory Surgery Ctr. v. UnitedHealth Group Inc.*, 99 F. Supp. 3d 1110, 1158 (C.D. Cal. 2015) (plaintiffs without access to plan documents must still allege the plans cover each of the specific services at issue); *see also Cty. of Monterey v. Blue Cross of Cal.,* No. 17-CV-04260-LHK, 2019 WL 343419, at *5 (N.D. Cal. Jan. 28, 2019) (dismissing ERISA claim because "important factual allegations are missing from the Complaint, including the specific [benefit] claims . . . at issue").

The Complaint fails to identify a single service for which Plaintiff seeks payment, much less state whether the services are covered by the relevant plans. Plaintiff relies on a single allegation that Morningside "provided professional medical and mental health services and rehabilitation care for patients suffering from mental health and [substance use disorders]."  (Opp'n at pp. 13–14.)  But this identifies only broad categories of services.  It provides no information about the specific services Morningside actually provided since "medical and mental health services" include a wide variety of treatments.  *See Simi Surgical Ctr., Inc. v. Conn. Gen. Life Ins.*, No. 2:17-CV-02685-SVW-AS, 2018 WL 6332285, *1, 2, n.2 (C.D. Cal. Jan. 4, 2018) (dismissing ERISA claim because plaintiff "fail[ed] to allege facts identifying . . . any specific services that [the plaintiff] provided," and only

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-7-

DEFENDANTS' REPLY ISO
MOTION TO DISMISS;
CASE NO. 8:19-CV-00531-DOC (DFM)

generally alleged it "provide[d] surgery services for various procedures"). This pleading deficiency renders it impossible to assess whether the ERISA plans cover the services at issue. Plaintiff has not met its burden of pleading that the applicable plans cover each of the relevant services. *See Almont Ambulatory Surgery Ctr.*, 99 F. Supp. 3d at 1159. Plaintiff's ERISA claim should be dismissed.

## IV. The Breach Of Implied Contract Claim Fails Because Plaintiff Does Not Allege Facts To Plausibly Plead The Existence Of A Contract.

To plead a claim based on an implied oral contract, a complaint must state facts supporting each element of a contract claim. *Div. of Labor Law Enf't v. Transpacific Transp. Co.*, 69 Cal. App. 3d 268, 275 (1977) ("As to the basic elements, there is no difference between an express and implied contract."). This requires allegations of "specific facts . . . to determine there was [a] meeting of the minds between the parties." *Pac. Bay Recovery*, 12 Cal. App. 5th at 216. A claim seeking reimbursement for the provision of health care services on an implied contract theory must allege, at the very least, when the contract was entered, the "type of treatment" provided and "what exactly [the insurer] agreed to pay." *Id.*; *see also Casa Bella Recovery Int'l, Inc. v. Humana Inc.*, No. SACV 17-01801 AG (JDEx), 2017 WL 6030260, at *4 (C.D. Cal. Nov. 27, 2017) (dismissing implied contract claim because provider's allegations "don't sufficiently describe, for example, when Plaintiff obtained authorization, for what types of service or how many patients, or how much Defendant agreed to pay when authorizing treatments").

Plaintiff does not argue that it is somehow exempt from the pleading requirements set forth in *Pacific Bay Recovery* and *Casa Bella Recovery* and, in fact, completely ignores both cases. Instead, Plaintiff cites cases holding that a provider can, in some circumstances, assert an implied contract claim against an ERISA plan without being subject to ERISA preemption. *See Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 949–50 (9th Cir. 2009); *Cedars-*

*Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 980 (9th Cir. 2007); *Armijo v. ILWU-PMA Welfare Plan*, No. CV-15-01403-MWF (VBKx), 2015 WL 13629562, at *22 (C.D. Cal. Aug. 21, 2015).  But United does not assert an ERISA preemption defense at this stage, and the cases Plaintiff cites do not contradict the fundamental point that a provider must support an implied contract claim with specific factual allegations.  To the contrary, those cases largely support United's position.  *See Armijo*, 2015 WL 13629562, at *23 (holding that, although not necessarily preempted, a provider failed to state an implied contract claim because it relied solely on a preauthorization letter); *cf. Marin*, 581 F.3d at 943 (remanding case where provider identified specific procedure at issue, dates on which it performed the procedure, and specific amount the insurer allegedly agreed to pay).

Plaintiff offers nothing to refute the absence of allegations in the Complaint regarding when the contracts were entered, the type of services Morningside agreed to provide, or the amount United agreed to pay for those services.  The Complaint asserts no facts identifying the specific conduct that allegedly created each implied agreement, the individuals who participated in that conduct, or the context of that conduct.  Instead, it simply alleges generically that Morningside "requested pre-authorizations or pre-certifications from United" and that United "represent[ed] that it would reimburse [Morningside] for its services."  (Compl. ¶ 90.)  Courts repeatedly find such allegations insufficient.  *See Pac. Bay Recovery*, 12 Cal. App. 5th at 216; *Casa Bella Recovery*, 2017 WL 6030260, at *4; *Armijo*, 2015 WL 13629562, at *23.  Plaintiff's implied contract claim should be dismissed.

## V. Plaintiff Lacks Standing To Assert A UCL Claim.

### A. Plaintiff Concedes It Is Not A Competitor Or Consumer.

Plaintiff spends almost two pages of its opposition supporting United's position that a plaintiff must be either the defendant's competitor or a consumer to assert a UCL claim.  (Opp'n at pp. 17–18.)  It accurately cites *ChromaDex, Inc. v.*

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-9-

DEFENDANTS' REPLY ISO
MOTION TO DISMISS;
CASE NO. 8:19-CV-00531-DOC (DFM)

*Elysium Health, Inc.*, 301 F. Supp. 3d 963, 975 (C.D. Cal. 2017) for the proposition that a UCL claim is an improper mechanism to resolve "a dispute between commercial parties over their economic relationship."  The parties therefore agree that a non-consumer, non-competitor lacks standing to assert a UCL claim.  *See Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007) (affirming dismissal of UCL claim where plaintiff was "neither [a] competitor[] nor powerless, unwary, consumers").

Plaintiff does not claim to be a consumer or United's competitor.  Rather, it is a collection agency that purchased the assets of a failing recovery center.  Nor does Plaintiff argue that Morningside competed with United or was a consumer of health plans.  Based on Plaintiff's own admissions, Plaintiff lacks standing to assert a UCL claim on its own behalf or as Morningside's assignee.

## B.  Plaintiff Cannot, As A Matter Of Law, Assert A Derivative UCL Claim Based On Alleged Injuries To United Beneficiaries.

In an attempt to salvage UCL standing, Plaintiff argues that it does not assert its UCL claim on Morningside's behalf, but rather on behalf of the United beneficiaries who assigned their rights to Morningside.  Plaintiff claims its UCL claim is based on alleged "unfair practices by Defendants with respect to the consumers who entered into the agreements for benefits," which allegedly "were assigned to Morningside."  (Opp'n at p. 19.)  Plaintiff further argues that it can assert a UCL claim because "the benefits plans were originally purchased by individual consumers before being assigned to Morningside."  (*Id.* at p. 17.)

But Plaintiff cannot, as a matter of law, assert a UCL claim on behalf of allegedly injured consumers who assigned their rights to Morningside.  California voters passed Proposition 64 in 2004, which limits UCL standing to those directly injured by unfair competition.  *See Amalgamated Transit Union*, 46 Cal. 4th at 1000.  This means that a plaintiff only has standing to assert a UCL claim if it "has suffered injury in fact and has lost money or property as a result of the unfair

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-10-

DEFENDANTS' REPLY ISO
MOTION TO DISMISS;
CASE NO. 8:19-CV-00531-DOC (DFM)

competition." Cal. Bus. & Profs. Code § 17204.  In light of this rule, a party that lacks UCL standing cannot acquire standing through assignment.  *See Amalgamated Transit Union*, 46 Cal. 4th at 1002 ("[W]e conclude that under the unfair competition law an injured employee's assignment of rights cannot confer standing on an uninjured assignee.").  As the Supreme Court of California explained, "[t]o allow a noninjured assignee of an unfair competition claim to stand in the shoes of the original, injured claimant would confer standing on the assignee in direct violation of the express statutory [standing] requirement in the unfair competition law."  *Id*. (emphasis omitted).  Thus, a provider cannot stand in the shoes of the beneficiaries it treated and assert a UCL claim.  *See Almont Ambulatory Surgery Ctr.*, 99 F. Supp. 3d at 1185 (health care providers lacked UCL standing where the UCL claim was intertwined with ERISA claims asserted on behalf of beneficiary assignors); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 899 (C.D. Cal. 2012) (providers could not assert UCL claims based on injuries incurred by their patients).

Here, Plaintiff acknowledges that it asserts its UCL claim as an assignee of beneficiaries' rights.  (Opp'n at pp. 17, 19.)  Thus, under *Amalgamated Transit Union*, Plaintiff lacks standing to pursue its UCL claim, and the claim should be dismissed with prejudice.[3]

## CONCLUSION

Based on United's Motion and the foregoing arguments, United respectfully requests that the Court dismiss the Complaint in its entirety.

---

[3] Equally unpersuasive is Plaintiff's reliance on *Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.*, 277 F.R.D. 586, 607 (S.D. Cal. 2011) for the general proposition that a plaintiff may demonstrate violation of the UCL by showing that reasonable members of the public are likely to be deceived.  This has absolutely nothing to do with whether Plaintiff—a third-party collection agency—has standing to assert a UCL claim on behalf of health plan beneficiaries.  The alleged merits of the claim are irrelevant if Plaintiff cannot establish it has standing in the first place.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-11-

DEFENDANTS' REPLY ISO
MOTION TO DISMISS;
CASE NO. 8:19-CV-00531-DOC (DFM)

1

2     Dated: May 24, 2019            CROWELL & MORING LLP

3

4                */s/ Daniel M. Glassman*

5                Jennifer S. Romano
                Daniel M. Glassman

6                Dylan S. Burstein
                Stephanie V. Phan

7              Attorneys for Defendants

8        UNITED HEALTHCARE SERVICES, INC.,
        UNITED BEHAVIORAL HEALTH, and

9            OPTUM SERVICES, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-12-

DEFENDANTS' REPLY ISO
MOTION TO DISMISS;
CASE NO. 8:19-CV-00531-DOC (DFM)

## **CERTIFICATE OF SERVICE**

Pursuant to Rule 5-3 of the Local Civil Rules of the United States District Court for the Central District of California, I hereby certify under penalty of perjury under the laws of the United States of America that on May 24, 2019, a true copy of the above document was filed through the Court's Electronic Case Filing system and served by that system upon all counsel of record registered for the system and deemed to have consented to electronic service in the above-captioned case.

Dated:  May 24, 2019                          CROWELL & MORING LLP


                                      */s/ Daniel M. Glassman*
                                      Daniel M. Glassman
                                      Attorneys for Defendants